

**IN THE CIRCUIT COURT OF THE**
**NINTH JUDICIAL CIRCUIT IN AND**
**ORANGE COUNTY, FLORIDA**

WENDY BETTS,
individually and on behalf
of other similarly situated,

      Plaintiffs,

vs.

ADVANCE AMERICA, CASH ADVANCE
CENTERS OF FLORIDA, INC., a Delaware corporation,
and unknown entities and individuals,

      Defendants.

CASE NO: C099·3458

CLASS REPRESENTATION 40



_____

Send copy to:  Office of the Attorney General
               State of Florida

      Plaintiff's counsel requests that the clerk mail a file stamped copy of the Complaint to

the Attorney General of the State of Florida.  A pre-addressed stamped envelope is provided for

that purpose.

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

      Plaintiff Wendy Betts ("Betts" or "Plaintiff") individually, and on behalf of others

similarly situated ("members of the class"), through the undersigned counsel, complaining

against the Defendants  Advance America, Cash Advance Centers of Florida, Inc. ("Advance

America"),  and unknown  entities and individuals (collectively "Defendants"), hereby states as

follows:

**INTRODUCTION**

     1.     This is a class action brought pursuant to Rule 1.220 of the Florida Rules of Civil

Procedure, arising out of a scheme under which the Defendants charged and collected from

Plaintiff and numerous others similarly situated, unconscionable usurious interest rates for

consumer loans through systematic and flagrant violations of numerous federal and state

consumer protection laws and regulations.  Defendants, inter alia, also illegally coerced payment

of monies from Plaintiff and members of the class by directly and indirectly falsely threatening

to pursue collection under Florida  bad check laws.  Plaintiff seeks injunctive relief and the

recovery of statutory damages, civil penalties, actual damages, compensatory damages, punitive

damages, litigation expenses and costs and attorneys' fees.

      2.     Count I of this action alleges that Defendants violated Florida's Lending

Practices Act, Chapter 687, Florida Statutes.

      3.     Count II of this action alleges that Defendants violated Florida's Consumer

Finance Act, Chapter 516 Florida Statutes.

      4.     Count III of this action alleges that Defendants violated Florida's Deceptive and

Unfair Trade Practices Act, Chapter 501, Consumer Protection Part II, Florida Statutes.

      5.     Count IV of this action alleges that Defendants engaged in a fraudulent scheme,

artifice and devise to extract usurious sums and exorbitant charges through knowing, intentional

and willful misrepresentations.

### JURISDICTION AND VENUE

      6.     This is an action for damages that exceeds $15,000.00.

      7.     Defendant Advance America is a corporation organized and existing under the

laws of Delaware and is qualified to do business in the State of Florida, doing business at 260

Semoran Blvd., Casselberry, Florida, 32707.  Advance America's registered agent is NRAI

Services, Inc., 526 East Park  Avenue, Tallahassee, Florida 32301.

      8.     Advance America and unknown individuals have knowingly engaged in the

business of lending money to consumers at unconscionable usurious interest rates at its business

location at 260 Semoran Blvd., Casselberry, Florida and other locations in the State of Florida.

## THE PARTIES

9.      Plaintiff, Wendy Betts, is an individual residing at 427 Sheoah, Winter Springs, Florida 32708.

10.     Defendant Advance America, Cash Advance Centers of Florida, Inc. is a Delaware corporation  located at 961 E. Main St., Spartanburg, South Carolina 32301. Advance America was established and qualified to business in the State of Florida for the purpose of engaging in the unlawful practices set forth hereinafter and conducting business as Advance America and other names unknown to Plaintiff nationally and throughout the State of Florida, including  260 Semoran Blvd., Casselberry, Florida, 32707.

11.     William M. Webster, Wayne W. Hall and George D. Johnson Jr., 961 E. Main St., Spartanburg, South Carolina and Steve A. McKenzie, 650 25th St., Cleveland, Tennessee, are directors and corporate officers. The extent of the ownership, control and participation of these directors and/or corporate officers in the unlawful business practices of Advance America is unknown.

12.     Entities and individuals unknown to the Plaintiff are majority owners and managing officers of Advance America who control the business practices of Advance America.

13.     The masterminds who conceived the idea to engage Advance America in the practice of giving loans under the guise of a check cashing scheme and were responsible for bringing Advance America  operations to Florida.  Entities and individuals unknown to Plaintiff at this time organized, developed, controlled and promoted the unlawful activities of Advance America and  profited therefrom are unknown to Plaintiffs at this time.

14.     Entities and individual defendants unknown to Plaintiff have joined the officers and director of Advance America in operating and participating in an illegal enterprise by

imposing and collecting illegal and usurious interest more than twice the enforceable rate under Florida law from Plaintiff and members of the class.

## GENERAL ALLEGATIONS APPLICABLE TO ALL

## MEMBERS OF THE CLASS

15.     Defendants through their various businesses and locations throughout the State of Florida engaged in a common course of illegal conduct by which they offered to and did loan money to consumers in exchange for a written document in the form of a personal post dated check ("check") and a written agreement to repay money in an amount larger than the borrower received within a short period of time, usually two weeks.  This practice is commonly known as payday loans.  The same loan service was offered by Defendants and accepted by Plaintiffs and members of the class through the same procedure at each of Defendants' locations.  Under the guise of what they falsely portrayed as a check cashing service, Defendants loaned money to thousands of consumers throughout Florida at usurious and exorbitant rates, many times greater than permitted by law.

16.     Defendants perpetrated their illegal scheme upon those who used their services through the same methods, practices and procedures, namely money lending transactions which Defendants called "cash advance" or "check cashing" transactions and loan extensions or "roll-over" transactions. The transactions are in reality payday loans.

17.     In each "check cashing" transaction, Plaintiffs and members of the class, as the borrowers, gave Defendants as lenders a post dated "check" made payable to Defendants, and agreed in writing that the face value of the "check" would be paid within a short time period, usually two weeks. The Defendants, in exchange for the "check" and an agreement, gave the Plaintiff and members of the class cash in an amount less than the face value of the "check." At sometime 1998, Defendants began depositing all customers' "checks" whether or not the loans

were extended. The Defendants knew or reasonably should have known that this business practice constitutes a loan under Florida law.

18.     Under the ruse of charging Plaintiffs and the members of a class "fees", Defendants in reality were charging interest for the use, forbearance or detention of the money.

19.     Each "check", as written, exceeded the amount of money advanced by Defendants. For example, in exchange for $107.50 in cash, Plaintiff Betts had to execute a personal "check" for $120.00. Each "check" served as evidence of the Plaintiff.'s debt to Defendants and was used by Defendants to assure prompt payment by Plaintiff and class members.

20.     Plaintiff and members of the class were solicited to extend, repeat, roll-over or flip their loan(s) with Defendants by paying "fees" which were in fact illegal interest, usually every two weeks. In each transaction, once the Plaintiff paid the "fee" to Defendants, then Defendants would again forbear the collection of the debt.

21.     Defendants contemplated as part of its business practice that Plaintiffs would defer payment of "checks" on the due date. The "fee" on each deferral was interest for allowing Plaintiffs and members of the class to defer payment on the original extension of credit.

22.     Defendants knew or reasonably should have known from the course of conduct that Plaintiff and the other members of the class would become mired in debt by repeating, and/or renewing the loans.

23.     The Defendants knew or reasonably should have known from the course of conduct that at the time of each transaction, Plaintiff and other members of the class would not have sufficient funds in their personal bank account to cover the "check" on the date scheduled for repayment.

24.     Each "fee" payment on an extension or "rollover" transaction was

unconscionable, usurious, illegal and violative of the statutes set forth in this Complaint.

25.     The Defendants failed to give in the proper form the required disclosures under 15 U.S.C. §§ 1631, 1632 and 1637 and 12 C.F.R. § 226.5.

26.     The unconscionable rate of interest charged by Defendants, and not disclosed to Plaintiff and members of the class,  ranged upward from 217% annual percentage rate.

27.     To enforce payment of Plaintiff's "checks,"  Defendants expressly threatened that in the event  Plaintiffs failed to redeem the "checks" by payment in full within the prearranged period of repayment, Defendants would deposit Plaintiffs' "check."  If Plaintiffs' "checks" did not clear on presentment, Defendants directly by written contact and indirectly threatened to prosecute Plaintiffs for violations of the Florida law governing dishonored checks, when they knew or reasonably should have known that the "loan" document was not  an instrument payable on demand; was not backed by funds in the bank;  the agreement accompanying the "loans" as defined by the Uniform Commercial Code, had created an extension of credit;  that Plaintiff and members of the class were not subject to the Florida law governing dishonored checks; and that the "checks" were security for an unenforceable usurious debt.

28.     Defendants engaged in this course of conduct for the purpose of compelling Plaintiff to pay the usurious interest rate for the extension of credit to them.

29.     As a result of the Defendants' threats based on the  agreement, the Plaintiff and members of the class paid illegal and usurious interest.

30.     Each class member was harmed in the same way having been falsely induced to sign the contract and to borrow money and pay usurious, exorbitant and illegal interest rates to their severe detriment and damage.

31.     Each loan transaction was concluded in minutes and only minimal service costs

were incurred by Defendants.

32.     Defendants were not licensed to make consumer loans in the State of Florida prior to the filing of this action.

33.     Plaintiff is advised and avers that Defendants have not, during the period of time material hereto, acted in good faith in reliance upon any duly and lawfully adopted subsisting order, declaratory statement or rule issued by the Department of Banking and Finance.

### ALLEGATIONS RELATING TO PLAINTIFF BETTS TRANSACTIONS

34.     On April 30, 1998, Betts began doing business with Advance America at its business location at 260 Semoran Blvd., Casselberry, Florida, because she needed money to pay personal bills. Betts borrowed $300.00 from Advance America. Advance America required her to negotiate a post dated check in an amount larger than the principal sum advanced. The post dated check was written for the face amount of $333.00. Advance America agreed to hold the check until her next payday, approximately two weeks. Advance America required Betts to redeem the check within two weeks. If Betts could not redeem the check at the due date, Advance America solicited, encouraged and coerced her to renew her loan by writing a new or replacement check and paying Advance America $333.00 for an extension of her original loan. In August, 1998, Betts increased her loan to $400.00 and paid a "fee" of $43.00 every two weeks. These renewals, and the payment of the "fees" continued until February, 1999.

35.     Advance America concealed the illegal interest charges and the true nature of the transactions.

36.     Advance America compelled Betts to pay unconscionable usurious interest rates on her loan. Advance America knew that the check was an instrument to carry out an usurious loan with an interest rate in excess of 45% per annum; was not payable on demand; was not enforceable and did not subject Betts and members of the class to sanctions under the bad check

law.

## CLASS REPRESENTATION ALLEGATIONS

37.     Plaintiff brings this class action on behalf of a class of potentially thousands of consumers who were victimized by the Defendants' illegal course of conduct in the State of Florida. Plaintiff and all class members were subjected to the same money lending scheme, were harmed in the same manner, and now seek to enforce the same rights and remedies under the same legal theories.

38.     The class for purposes of Count I   (Florida's Lending Practices Statutes) consists of all persons who received cash in exchange for a personal "check" from a Defendant as part of its business in Florida from four years before the filing of this suit. The class for purposes of Count II (Florida Consumer Finance Statutes) consists of all persons who received cash in exchange for "checks" from a Defendant as part of its business in Florida from four years before the filing of this suit. The class for purposes of Count III (Deceptive and Unfair Trade Practices Act) consists of all persons who received cash in exchange for "checks" from a Defendant as part of its business in Florida from four years before the filing of this suit. The class for purposes of Count IV (fraud) consists of all persons who received cash in exchange for "checks" from a Defendant as part of its business in Florida from four years before the filing of this suit.

39.     The class, which includes thousands of persons, is so numerous that joinder of all members is impracticable.

40.     There are questions of law and fact common to the class as a whole, which predominate over any questions affecting individual class members. The common questions of law are:

> a.     Whether Defendants' businesses were actually a loan operation and the fees charged and collected were interest;

> b.     Whether Defendants failed to disclose all material and necessary

information to Plaintiff and members of the class.

c.     Whether Defendants' collection of interest in excess of two hundred percent per annum was unconscionable and violated the Florida lawful rate of interest, as set forth in Florida Statues 516.01 <u>et seq</u>.;

d.     Whether Defendants were properly licensed to engage in the consumer credit business pursuant to Florida Statues 516.01 <u>et seq</u>.;

e.     Whether Defendants violated the Florida Usury Statute, Florida Statutes, 687.03;

f.     Whether Defendants violated the Florida Criminal Usury Statues, 687.071;

g.     Whether Defendants engaged in a fraudulent scheme, artifice and device to extract usurious and exorbitant interest through knowing, intentional, and willful misrepresentations.

41.     The claims of Plaintiff are typical of the claims of each member of the class, which all arise from the same operative facts and are based on the same remedial or legal theories.

42.     The Plaintiff will fairly and adequately protect the interests of each member of he class. The Plaintiff has common interests with unknown members of the class and intends to vigorously prosecute the interests of the class through qualified counsel. Plaintiff has retained counsel who are experienced in handling class actions and consumer protection cases. Neither Plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

43.     A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the class members were and still may be unaware of the wrongs perpetrated against them or of their right to legal redress for those wrongs. Although the practices complained of are directed against financially desperate persons unable to protect their rights because individual litigation for such small claims is not economically feasible,

Defendants derive large aggregate profits from the complained of violations, making a class action essential. Pursuant to Rule 1.220(b)(1), the prosecution of separate actions by individual members of the class, moreover, would create a risk of:

a. Inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for a party opposing the class; and

b. Adjudications concerning individual members of the class would, as a practical matter, be dispositive of the interest of other members of the class who are not parties to this adjudication or substantially impair or impede the ability of other members of the class to protect their interest. In fact, individual members of the class cannot effectively litigate against the Defendants or its representatives because of the costs incident thereto.

44.     Pursuant to Rule 1.220(b)(2), the Defendants have acted on grounds that are specifically and generally applicable to each potential member of the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

45.     Pursuant to Rule 1.220(b)(3), the questions of law and fact common to the claims of the representative party and the claims of each member of the class predominate over any questions of law or fact affecting only individual members. All potential Plaintiffs are easily identifiable through appropriate discovery.

46.     After determinations of the legality of the Defendants' conduct, the Court can utilize a simple method of accounting to resolve all potential claims of the Plaintiff and to resolve all potential claims of members of the class.

47.     Not only is a class action superior to other available methods for the fair and efficient adjudication of this controversy, but failure to utilize a class action will result in literally thousands of cases being filed in the various courts throughout the State of Florida and federal courts sitting in Florida.

48.     Members of the class, including Betts, are parties to similar lawsuits filed, or to be filed, against other defendant companies and individuals in federal and state courts in Florida, including Enfinger v. McKenzie Check Advance of Florida, LLC et als., No 99-97 CIV T (D.C.N.D. Fla.).

49.     The claims of Plaintiff arose in this venue; Plaintiff resides in Orange County; a substantial portion of the events giving rise to this lawsuit occurred in Orange County and the ends of justice require that Defendants be brought before this Court.

## COUNT I

## VIOLATION OF FLORIDA'S LENDING PRACTICES STATUTES, CHAPTER 687

50.     Plaintiff incorporates paragraphs one through forty-nine.

51.     Defendants have made consumer loans to the Plaintiff and class members in amounts less than $25,000.00, usually less than $500.00.

52.     Defendants have charged and collected exorbitant, unconscionable and usurious interest for the use of money, contrary to law.

53.     Upon information and belief, Defendants were not licensed to engage in the business of consumer credit.

54.     Defendants are and were at all relevant times in fact engaged in the business of making consumer loans and imposing and collecting loan charges which were interest.

55.     Since Advance America is not licensed, it is operating in violation of the law. The legal annual rate of interest that Defendants can charge and collect on loans is 18%. The interest charged by Defendants is in excess of 217% per annum.

56.     Defendants engaged in unconscionable conduct by taking interest and loan charges in excess of the limitation fixed by 687.02, 687.03, 687.04, and 687.071, Florida Statutes.

57.    By the willful and knowing making and renewing of loans of money to Plaintiff and members of the class and the willful and knowing charging and receiving interest at a rate exceeding 45 % per annum, Defendants were committing  acts of loan sharking or shylocking contrary to Florida Statute 687.071.

58.    Individuals and entities unknown to Plaintiffs willfully and knowingly developed, implemented, controlled and participated in charges and collections of these usurious rates and profited therefrom and should be held personally liable.

59.    Defendants are liable to Plaintiff and members of the class in the sum of double the amount of interest reserved, taken or exacted, a refund of all principal payments made to Defendants, and Defendants must forfeit all unpaid interest and principal.

## COUNT II
## VIOLATION OF THE FLORIDA CONSUMER FINANCE ACT

60.    Plaintiff incorporate paragraphs one through fifty-nine.

61.    Defendants engaged in the business of making consumer loans in an amount less than $25,000.00 at a rate of interest greater than the rate of interest permitted by law contrary to Florida Statutes, 516.001 et seq.

62.    On information and belief, Defendants are not qualified and are not licensed by the Secretary of Banking of the State of Florida  to make loans in an amount less than $25,000.00 as required by Florida Statues, 516.02.

63.    Defendants, its agents and employees, did directly and indirectly, by the devices, subterfuge and pretenses heretofore described, charge, contract for and receive a greater rate of interest than provided for by statute for loans in an amount of less than $25,000.00 against the public policy of the State of Florida.

64.    Defendants concealed the rate of interest and misrepresented to Plaintiff and

class members that the transactions were not loans contrary to Florida Statute 516.07(e).

65.     Defendants used unreasonable collection practices and false, deceptive and misleading advertising in connection with the operation of its business to make consumer loans in violation of Florida Statute 516.07(e).

66.     Plaintiff and members of the class were injured as a result of Defendants' violations. Defendants' loans are not enforceable.   Plaintiff and members of the class are entitled to a full refund of all loans collected by Defendants.

## COUNT III
## VIOLATION OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

67.     Plaintiff incorporates paragraphs one through sixty-six.

68.     Defendants engaged in false, misleading and deceptive advertising by statements that it engaged in a check cashing service for a fee when it was in fact lending money to consumers at an exorbitant rate of interest.

69.     Defendants violated Florida Statutes, Chapter 501, Part II known as the Florida Deceptive and Unfair Trade Practices Act by intentionally and in bad faith misrepresenting to Plaintiff and other class members that its money lending business was a check cashing business; specifically these representations include the following:

        a.     Misrepresenting that cash advances were check cashing transactions rather than loans;

        b.     Misrepresenting that its consumer debts could be collected by use of the Florida bad check laws;

        c.     Failure to disclose that interest was being charged to borrowers; and

        d.     Failure to disclose simple annual interest rates.

70.     Defendants charged usurious rates in excess of twelve (12) times the rate

permitted. Defendants' business practices contemplated that Plaintiff and members of the class would not have sufficient funds to cover the principal and interest when due. Defendants expressly and impliedly threatened to prosecute under the bad check law if Plaintiff and members of the class failed to pay the principal debt and the usurious fee and their checks did not clear on presentment for payment. These acts were unconscionable and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act.

71. By engaging in specific conduct alleged in the preceding counts of Plaintiffs' Complaint, Defendants committed and continue to commit unfair and deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes 501.202 et seq., including but not limited to:

    a.    causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval and/or certification of service;

    b.    causing likelihood of confusion or of misunderstanding as to the affiliation, connection, association with or certification by another;

    c.    using deceptive representations in connection with services;

    d.    representing that services have approval, characteristics, uses and/or benefits that they do not have;

    e.    representing that services are of a particular standard and quality when they are not;

    f.    advertising services with intent not to provide as advertised;

    g.    engaging in fraudulent conduct which creates the likelihood of confusion or of misunderstanding;

    h.    engaging in conduct which had the intended effect of misleading Plaintiff regarding the nature of services.

72. Defendants are liable for actual damages sustained for each consumer transaction, injunctive relief, attorneys' fees and costs in Florida Statute 501.211 for their

willful, malicious, intentional and/or wrongful acts.

**COUNT IV**
**FRAUD**

73.   Plaintiff incorporate paragraphs one through seventy-two.

74.   The Defendants engaged in a fraudulent scheme, artifice and device by which
they extracted usurious sums and exorbitant charges from Plaintiff and others similarly situated.
To perpetrate such a fraud, Defendants knowingly, intentionally and willfully made false
representations in written materials, including one or more of the following:

   a.   Defendants were not making loans;

   b.   Finance charges on Plaintiff's loans did not constitute interest;

   c.   Defendants could utilize Florida "bad check" law for the collection of
         monies from Plaintiff, and other class members;

   d.   Failure to make proper disclosures of its fees and practices.

75.   Plaintiff and other class members reasonably relied upon Defendants
misrepresentations and were injured as a result.

76.   Plaintiff and members of the class are entitled to actual damages and punitive
damages for these actions of the Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court issue the following relief:

   a)   That the Court make a determination as soon as practicable certifying that this
action may proceed as a class action and that the named Plaintiff may represent the class;

   b)   That Plaintiff have injunctive relief and members of the class against the
Defendants prohibiting them from continuing to engage in the illegal conduct as alleged;

   c)   The Defendants be ordered to cease their efforts to collect monies from Plaintiff
and class members; and

d)     Pursuant to the Florida Statute Chapter 687 and Chapter 516, the transactions between Plaintiff and class members and Defendants be declared void and Plaintiff and members of the class be awarded all sums paid to Defendants, including but not limited to principal, double interest, and any other fees for each and every transaction.

e)     Pursuant to the claims for fraud, Plaintiff and members of the class be awarded such actual damages as may be proven at trial, appropriate equitable relief, and punitive damages.

f)     The Plaintiff and members of the class be awarded attorneys' fees, costs, pre-judgment and post-judgment interest.

g)     Plaintiff be granted any other relief as the Court may deem appropriate.

h)     Pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes, Chapter 501, Part II, Plaintiff and members of the class be awarded actual damages, attorneys fees and costs.

## JURY TRIAL DEMANDED

Plaintiff herein demands a trial by jury of all issues so triable.

One of Plaintiff's Attorneys
E. Clayton Yates, Trial Counsel
**LAW OFFICE OF E. CLAYTON YATES**
P.O. Box 3657 34948-3657
205 South Second Street
Fort Pierce, FL 34950
561/465-7990
Florida Bar No: 0398720

Richard A. Fisher, Trial Counsel
**LOGAN THOMPSON MILLER BILBO THOMPSON FISHER, PC**
30 2nd Street
P.O. Box 191
Cleveland, TN  37364-0191
423/ 476-2251

423/ 472-0211

JACK L. BLOCK, Trial Counsel
**SACHNOFF & WEAVER, LTD.**
30 South Wacker Drive
29th Floor
Chicago, IL 60606-7484
312/207-1000

MICHAEL C. ADDISON, Trial Counsel
**ATTORNEY AT LAW**
P.O. 2175
Tampa, FL 33601-2175
814/223-2000

R. KEVIN FISHER, Trial Counsel
**LAW OFFICE OF R. KEVIN FISHER**
12424 Wilshire Blvd., Suite 770
Los Angeles, CA 90025
310/820-0772

COUNSEL FOR PLAINTIFF